JUDGE ROBINSON

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
LEAH GUGGENHEIMER, On Behalf of Herself and  : C.A. No. 00-
All Other Persons Similarly Situated,        :
                                             :
                Plaintiff,                   :  **07 CIV 7948**
                                             :
vs.                                          :
                                             :
THE ALLSTATE CORPORATION,                    :
                                             :
                Defendant.                   :
------------------------------------------------------------------x

## CLASS ACTION COMPLAINT

### NATURE OF ACTION

1.   Plaintiff, Leah Guggenheimer, by and through her undersigned counsel, individually and on behalf of the class of others similarly situated, brings this action against defendant The Allstate Corporation ("Allstate") for deceptive business practices in violation of the New York General Business Law, § 349 ("GBL §349").

2.   Plaintiff brings this action on behalf of all persons in New York having a homeowners insurance policy with Allstate at any time from 2006 to the present (the "Class").

3.   Commencing in or around early 2006, Allstate determined that it would drop coverage for homeowners, in part, because the homeowners did not have auto or other insurance policies with Allstate.

4.   The New York State Department of Insurance has determined that Allstate's practice of considering whether home owner insurance policy holders have auto or other insurance policies with Allstate when deciding whether to renew or drop their homeowner's insurance

1

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

coverage is in violation of the New York State Insurance Law and Regulations.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), because the matter in controversy in this class action exceeds $5,000,000, exclusive of interest, costs, and attorney's fees, and there is complete diversity among the parties: Defendant Allstate is a corporate resident of Illinois, and Plaintiff and the members of the Class are residents of New York.

6.  Venue is proper in this District inasmuch as Plaintiff resides in this District, and Defendant conducts a substantial amount of business in this District.

## THE PARTIES

7.  Plaintiff resides in Westchester, New York.

8.  Defendant The Allstate Corporation ("Allstate") is a nationwide insurance company publicly traded on the New York Stock Exchange under the symbol "ALL". Allstate maintains its corporate headquarters at 2775 Sanders Road, Northbrook, Illinois 60062-6127.

## CLASS ACTION ALLEGATIONS

9.  Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated homeowners in New York who have had a homeowner's insurance policy through Allstate at any time from 2006 through the present (the "Class"). Excluded from the Class are the officers, directors and employees (and the immediate families thereof) of defendant, and any of defendant's subsidiaries or affiliates and any director, officer and employee (and the immediate families thereof) of any

2

subsidiary or affiliate; any entity in which a defendant has a controlling interest; and the legal representatives, heirs, successors and assigns of any excluded person or entity. This class action seeks injunctive relief pursuant to Rule 23(b)(2) and actual damages.

10. Members of the Class are so numerous that joinder of all members is impracticable. Defendant Allstate insures approximately 650,000 homeowners in New York, thus making it the largest homeowner insurer in New York. The exact number of Class members and their addresses can be ascertained from the books and records of defendant through discovery.

11. Common questions or law and fact exist as to all members of the Class and predominate over any questions affecting solely any individual members of the Class, including the following:

    (a) whether defendant violated GBL § 349; and

    (b) whether Plaintiff and the other Class members have been damaged as a result.

12. Plaintiff is a member of the Class.

13. Plaintiff's claims are typical of the claims of the Class and Plaintiff has the same interests as the other Class members.

14. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained able counsel with extensive experience in breach of contract, consumer fraud and class action litigation. The interests of Plaintiff are coincident with, and not antagonistic to, the interests of the other Class members.

15. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

16. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for defendant.

17. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them. The Class is readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation. Plaintiff will encounter no difficulty in managing this action as a class action.

## SUBSTANTIVE ALLEGATIONS

18. As of early 2006, Plaintiff's home in Westchester, New York was insured through an Allstate homeowner's insurance policy.

19. In or around May 2006, Plaintiff received a notice from Allstate dated May 4, 2006. In this notice, Allstate indicated that it was seeking to reduce exposure to hurricane risk by reducing its number of homeowner insurance policies. Allstate informed Plaintiff that in approximately thirty days time, her Allstate homeowner's insurance policy would not be renewed. The letter directed Plaintiff to contact Allstate agent, Russell C. Campagna, to answer

questions she may have about this notice of non-renewal.

20. Upon receiving Allstate's notice, Plaintiff contacted Allstate agent, Russell C. Campagna, concerning her homeowner's policy and the May 4, 2006 notice. Plaintiff was told by this agent that Allstate was only renewing homeowners' insurance policies if the homeowners also had additional insurance policies, such as an auto insurance, through Allstate.

21. Plaintiff was also informed by this same Allstate agent in May 2006, that without auto insurance coverage through Allstate enabling her to renew her homeowner's policy, she could obtain homeowner's insurance through Tower Insurance Company of New York, a company in which Allstate had a financial interest. The Allstate agent informed Plaintiff that if she chose to obtain homeowner's insurance through Tower Insurance, that her premium would be higher.

22. Plaintiff did not obtain auto or other insurance coverage through Allstate at this time. Nor did she obtain a homeowner's insurance policy at a higher premium through the other company to which Allstate steered her, and in which Allstate had a financial interest.

23. On or about May 10, 2006, Allstate sent Plaintiff a letter informing her that it had dropped her homeowner's insurance coverage based, in part, on her not having additional insurance coverage (auto insurance) through Allstate. Allstate's non-renewal of Plaintiff's homeowner's insurance policy became effective as of July 7, 2006.

24. Plaintiff, like most home owners who have a mortgage, is required to maintain homeowner's insurance by her mortgage lender. Thus, as a result of Allstate's non-renewal of her homeowner's policy in May 2006, Plaintiff was under great time pressure in which to obtain

a new homeowner's insurance policy.

25. Allstate's reach in the New York homeowner's insurance market, moreover, is wide. Allstate has an 18% share of the homeowner's insurance policy market in New York, and a 25.9% share of the market in New York City, Long Island and Westchester, where Plaintiff resides.

26. As a result of Allstate's dominance in the New York home insurance market, obtaining alternative homeowner's insurance is difficult and expensive. Plaintiff obtained another homeowners' insurance policy, but at a much higher premium.

27. On or around August 28, 2007, the New York State Department of Insurance determined that Allstate's practice of considering whether policy holders have auto or other insurance coverage with Allstate when deciding whether to renew or drop their home owner's insurance coverage is a violation of the New York State Insurance Law and Regulations.

28. On August 28, 2007, Eric Dinallo, the Superintendent of the New York State Insurance Department, stated on Bloomberg.com that the "Insurance law is clear. . . . Companies can't use the threat of taking away your homeowners insurance to get you to buy an auto policy." Superintendent Dinallo stated that Allstate's practice was an unlawful rebate and inducement in violation of the New York State Insurance Law.

29. The New York State Insurance Department maintains that Allstate's non-renewal practice "unlawfully discriminates" against Allstate homeowner policyholders who do not have other insurance coverages with Allstate and "confers a special favor, benefit, advantage and/or other type of valuable consideration" upon insureds with another Allstate policy (life or auto), a

benefit that is not specified in the policy. Moreover, the New York State Insurance Department has determined that Allstate's non-renewal notice "clearly states that the non-renewal is a direct result of the policyholder's failure to purchase and maintain other coverage from the particular company." According to the New York State Insurance Department, consumers who had been renewed by Allstate thus "would reasonably infer that their insurance company might elect not to renew them on the next annual renewal date if they did not maintain their other policies with that company."

30. Moreover, as Mr. Dinallo, the Superintendent of the New York State Insurance Department, has recognized, Allstate's actions contradict what Allstate is telling policyholders and regulators: while Allstate says it is trying to reduce exposure to the risk of losses from hurricanes, Allstate is pressuring people to buy homeowners and auto or life insurance, which actually increases the insurers' risk.

31. Pursuant to Section 2402c of the New York State Insurance Law, a determined violation is "any unfair method of competition or any unfair or deceptive act or practice, which is not defined violation but is determined by the superintendent pursuant to section two thousand four hundred five of this article to be such method, act or practice."

32. On August 28, 2007, Superintendent Dinallo ordered Allstate to rescind non-renewal notices sent to homeowners based on the homeowners' lack of auto insurance or other coverage through Allstate. Allstate has refused.

33. On August 30, 2007, New York Senator Hillary Rodham Clinton criticized Allstate's practices, stating in the *Associated Press* that "The decision to grant or deny homeowners insurance should never be used as an attempt to extort more business out of a

customer."

34. This is not the first time Allstate's homeowner's insurance practices have been criticized. Indeed, in February 2006, New York Senator Charles Schumer also criticized Allstate's practice of failing to write new homeowners' insurance policies in New York City, Long Island and Westchester, absent much higher premiums, citing as justification a questionable hurricane risk.

35. Recent statistics from the National Oceanic and Atmospheric Administration (NOAA) show that the odds of a category four or higher hurricane hitting New York City is once every five hundred years and on Montauk Long Island once every 130 years. Miami, by contrast is once every 15 years. Thus, the risk of a hurricane hitting Miami is 900% greater than on Eastern Long Island and 3300% greater than in New York City.

36. Although Allstate announced that it would not write new homeowner policies in New York City, Long Island and Westchester as a part of an overall "hurricane risk management strategy" implemented at the start of 2006, Allstate has continued to write new policies for condominiums and coops in the exact same locations where it is refusing to insure homes.

37. According to Senator Schumer, homeowners "should not be made pawns by an rapacious insurance industry." Senator Schumer stated, "Allstate is the poster child for terrible corporate citizenship. They won't write new policies for fear of hurricanes when the odds of a severe hurricane hitting in New York City is one on every 500 years, . . . . They should be ashamed of themselves."

38. From 2001 to 2004, Allstate's profits have spiked from $990 million in 2001 to over 3.8 billion in 2004, for an increase of over 300%. In New York State, Allstate's 'loss ratio',

which measures the percentage of premiums paid out in claims, was better than the national average in 2004. In New York State it was 55, while nationwide it was 59. A score of under 60 is considered very good, and above 80 is considered problematic.

## COUNT I

## VIOLATIONS OF SECTION 349 OF NEW YORK

## GENERAL BUSINESS LAW: DECEPTIVE ACTS AND PRACTICES

39. The allegations contained in each paragraph set forth above in this Complaint are realleged and incorporated by reference as if fully set forth herein.

40. Allstate's practice of conditioning renewal of homeowner's insurance coverage on the home owner having or obtaining auto or other additional insurance coverage from Allstate is a deceptive and unfair business practice. Allstate has engaged in deceptive and unfair business practices by, among other things, threatening and retaliating against its policyholders in order to induce them to purchase or maintain more insurance products from Allstate and/or steering them into homeowner's policies with higher premiums if they do not obtain additional insurance products from Allstate. Allstate cannot force homeowners insured with Allstate into obtaining and/or maintaining additional Allstate insurance products by means of threats and various retaliatory measures, including non-renewal of the Allstate homeowner's insurance policy. Nor can Allstate discriminate against homeowners who choose alternatives for life and auto insurance by refusing to renew their homeowner's insurance policies with Allstate. Such behavior is indicative of the deceptive and unfair practices that General Business Law § 349 was designed to

prevent.

41.   Allstate's practice of conditioning renewal of homeowner's insurance on the home owner having and/or obtaining additional insurance products from Allstate is an unfair and unlawful rebate and inducement in violation of the New York State Insurance Laws and Regulations, and constitutes acts, uses, or employment by defendant and its agents of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of merchandise, and with the subsequent performance, of defendant in violation of § 349 of New York's General Business Law, making deceptive and unfair acts and practices illegal.

42.   The Superintendent of the New York State Department of Insurance has specifically determined that Allstate's practice of considering whether home owners have additional insurance products through Allstate when deciding whether to renew an Allstate homeowner's policy constitutes an unfair and deceptive practice in violation of the New York State Insurance Law and Regulations.

43.   The unfair and deceptive trade acts and practices of Allstate have directly, foreseeably, and proximately caused damages and injury to Plaintiff and the other members of the Class.

44.   Plaintiff and the other members of the Class have no adequate remedy of law.

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Class, prays for judgment, as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as a representative of the Class under Rule 23 of the Federal Rules of Civil Procedure;

(b) Ordering defendant to cease and desist from its deceptive acts and practices, consumer fraud and unconscionable commercial practices, including: (I) considering whether home owners have auto or life insurance policies with Allstate when deciding whether to renew or drop a home owner's insurance policy and (ii) dropping or failing to renew homeowner's insurance policy when they do not have additional insurance policies with Allstate.

( c) Ordering defendant to rescind non-renewal notices to persons with Allstate homeowner's insurance based on the homeowner's lack of other insurance coverage through Allstate.

(d) Ordering defendant to disgorge all profits made as a result of its deceptive practice of conditioning renewal of homeowner's insurance policies on the homeowner having other insurance coverage through Allstate.

(e) Awarding Plaintiff and the Class actual damages.

(f) Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' and experts' fees, and other expenses incurred in prosecuting this action; and

(g) Granting pre-judgment interest and such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: September 10, 2007

                              GISKAN, SOLOTAROFF & ANDERSON, LLP

                              Oren Giskan (OG 3667)
                              Catherine E. Anderson (CA 5129)
                              11 Broadway, Suite 2150
                              New York, New York 10004
                              Tel:    (212) 847-8315

                              THE LAW OFFICES OF DANIEL LYNCH
                              Daniel Lynch
                              150 S. Wacker Drive, Suite 2600
                              Chicago, Illinois 60606